# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.G. and D.G.-1**

**No. 17-0612** (Cabell County 16-JA-9 and 16-JA-10)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother D.G.-2, by counsel Kerry A. Nessel, appeals the Circuit Court of Cabell County's June 2, 2017, order terminating her parental rights to L.G. and D.G.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sarah E. Dixon, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her improvement period and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition against the parents that alleged they provided inappropriate medical care for the children. Specifically, the DHHR received a referral that L.G. suffered from a seizure disorder that required medication be administered twice per day. Upon taking the child to a doctor because of a seizure, blood work revealed no trace of the seizure medication in the child's system. According to the petition, medical professionals instructed the parents that failure to administer the medication as instructed would result in additional seizures and that the child could die should the seizures be severe enough. Further, the DHHR alleged that D.G. had a severe rash covering his legs, which appeared swollen. According to petitioner, the child had recently been hospitalized due to chicken pox. The petition further alleged that the home was in deplorable condition and lacked running water.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as D.G.-1 and D.G.-2, respectively, throughout the memorandum decision.

The DHHR additionally alleged that petitioner lied about where the children resided. According to the petition, she indicated that the children lived with their grandmother due to the lack of running water in the parents' home. However, relatives informed the DHHR that, upon learning of Child Protective Service's ("CPS") intention to come to the home, petitioner contacted family members and told them that if the children did not leave for a relative's home they would be removed. Finally, the DHHR alleged that the parents had previous CPS involvement due to the conditions in the home. As such, the petition alleged that the parents neglected the children by failing to provide them with safe and adequate living conditions and medical neglect.

Thereafter, petitioner waived her preliminary hearing and then stipulated to neglect at adjudication. The circuit court also granted petitioner a post-adjudicatory improvement period, which included the following requirements: (1) consistently continue with individualized therapy and take medications as prescribed; (2) find a new home that could accommodate the children; (3) participate in and complete adult life skills and parenting education; (4) participate in financial counseling; and (5) submit to a parental fitness/psychological evaluation and follow and complete all the evaluator's recommendations. In April of 2016, petitioner completed the evaluation. The evaluation included the following recommendations for petitioner: (1) weekly psychotherapy; (2) domestic violence education followed by couples counseling if the parents remained together; and (3) psychiatric consultation for medication management.

In December of 2016, the circuit court held a review hearing during which a CPS worker testified to petitioner's manipulation and dishonesty during the proceedings. According to testimony, petitioner represented to service providers that her attorney granted extra child visits with the father's relatives. This was in spite of the CPS worker having authorized only two visits per month with supervision from the paternal grandparents. The worker also testified that petitioner told a service provider that a CPS supervisor told her he would not permit the DHHR to seek termination of petitioner's parental rights. The CPS worker testified that these statements were untrue. Finally, it was established that petitioner was released from her psychiatrist's care. Based on this evidence, the circuit court terminated petitioner's improvement period.

In April of 2017, the circuit court held a dispositional hearing, during which petitioner admitted that she was not ready for the children to return to her custody. Testimony from a service provider established that petitioner needed to completely fix the home before the children could be returned. The provider also testified that, in order to remedy the conditions of neglect, petitioner needed weekly psychotherapy and domestic violence education, among other services. Another CPS worker testified that petitioner failed to make significant progress, especially in light of the fact that she waited too long to enroll in therapy. The CPS worker also testified that it was not safe to return the children to the home.

Ultimately, the circuit court found that petitioner had not complied with the recommendations from the psychological evaluation. Further, the circuit court found that petitioner failed to complete the terms of her family case plan. Accordingly, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect and that termination of her parental rights was necessary for the children's welfare. As

such, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her improvement period and parental rights. We do not agree. While petitioner is correct that her acknowledgement of the conditions of neglect rendered her amenable to services to correct these conditions, there is simply no evidence in the record that petitioner took the appropriate steps to achieve this goal. Contrary to petitioner's argument that she was complying with services, the circuit court was presented with evidence that petitioner did not substantially comply with the services offered. In fact, the circuit court specifically found that it "extended the timelines for the respondent parents and . . . tried to bend over backwards and give the respondent parents the opportunity to comply with their [f]amily [c]ase [p]lan." However, the circuit court ultimately found that petitioner failed to complete the terms of her family case plan, despite explicit instructions to work toward this goal prior to the dispositional hearing. Moreover, petitioner admitted that she was not ready for the children to return to the home. The record shows that petitioner was not prepared for the children's return, in part, because she had not completed portions of the family case plan that would have made the home habitable for the children.

Although petitioner argues that she should have been entitled to more time to participate in an improvement period because she was already complying with the terms of the family case plan, we do not agree. As set forth above, petitioner had multiple opportunities to comply with the family case plan but failed to do so. Pursuant to West Virginia Code § 49-4-610(7), upon the

---

[2]In addition to the termination of petitioner's parental rights, the parental rights of the father to the children were terminated below. According to respondents, the permanency plan for the children is adoption in the current foster home.

motion of any party, a circuit court "shall terminate any improvement period . . . when the court finds that respondent has failed to fully participate in the terms of the improvement period . . . ." There is simply no evidence in the record to establish that petitioner fully participated in the terms of her improvement period. On the contrary, the record shows that petitioner failed to complete the services provided. As such, the circuit court did not err in terminating petitioner's improvement period.

Moreover, petitioner's failure to participate in services also supported the circuit court's termination of parental rights. In the dispositional order, the circuit court specifically found that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect in the near future. Pursuant to West Virginia Code § 49-4-604-(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child[.]" As set forth above, petitioner failed to follow through with the family case plan. The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings. Accordingly, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 2, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker